ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

DAVID COUNTRYMAN (CABN 226995)
Assistant United States Attorney

DONOVAN MCKENDRICK (CABN 284339)
Special Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7164
    FAX: (415) 436-7234
    donovan.mckendrick@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. |
| Plaintiff, | COMPLAINT FOR FORFEITURE |
| v. | |
| $681,800.00 seized from Raritan Bay Federal Credit Union, Account Number 14244; | |
| Defendant. | |

**NATURE OF THE ACTION**

1.     This is a judicial forfeiture action, as authorized by 18 U.S.C. §§ 981(a)(1)(A), 981(a)(1)(C), 981(b), and 21 U.S.C. § 881(a)(6), involving the seizure of the following property:

- $681,800.00 seized from Raritan Bay Federal Credit Union, account number 14244 (hereinafter, collectively, the "Defendant Property"), as property constituting, or derived from,

COMPLAINT FOR FORFEITURE

any proceeds of 18 U.S.C. § 1343 (Wire Fraud) and thereby forfeitable pursuant to 18 U.S.C. §§ 981(a)(l)(D).

**JURISDICTION AND VENUE**

2. This Court has jurisdiction under 28 U.S.C. §§ 1345 and 1355(a), and 18 U.S.C. §§ 981(a)(l)(D).

3. Venue is proper because the defendant currency was seized in the Northern District of California, per 28 U.S.C. §§ 1355(b) and 1395.

4. Intra-district venue is proper in the San Francisco Division within the Northern District of California.

**PARTIES**

5. Plaintiff is the United States of America.

6. The Defendant Property is $681,800.00 U.S. dollars seized from Raritan Bay Federal Credit Union, account number 14244, held in the name of Alan Yegian. The Defendant Property was obtained on March 1, 2023 and is currently in the form of a cashier's check in the amount of $681,800.00 written to the order of United States Secret Service on February 15, 2023, which itself is currently in United States Secret Service custody. Please see below image of the seized currency in cashier's check form:



COMPLAINT FOR FORFEITURE

# FACTS

**A. The Business E-Mail Compromise Committed Against Legacy Partners in December 2022**

7. On January 4, 2023, the United States Secret Service San Francisco Field Office was notified by Wells Fargo of a business email compromise incident that resulted in the recall of a wire, in the amount of $2,512,021.27.

8. Per a statement from victim Legacy Partners to the U.S. Secret Service ("USSS") as part of this investigation, on December 21, 2022, a project manager at Legacy Partners, a real estate, investment, and development company based in Foster City, California, received an email believed to be from the Chief Financial Officer of Catamount Inc. ("Catamount"), a contractor with whom Legacy Partners had a working relationship. The nefarious email used an address with a domain that had an incorrect spelling of Catamount. The content of the email advised there were new payment instructions and provided a phone number to call. Legacy Partners called the phone number, received new wiring instructions from a fraudulent actor masquerading as an employee of Catamount, and sent a wire on December 27, 2022 from their account held in the name of "Legacy DTC Owner LLC" at JP Morgan Chase for $2,512,021.27 to the provided account number. Meanwhile, Catamount received a nefarious email from an email address with a domain that had an improper spelling of Legacy Partners. Catamount was advised by a fraudulent actor masquerading as Legacy Partners that the payment from Legacy Partners would be delayed and processed in January.

9. Law enforcement identified this method of communicating with both the victim business and the legitimate business being impersonated as a tactic used by criminals to delay the inevitable realization that the payment was diverted, and thereby decrease the possibility that receiving banks are notified of the fraud prior to the depletion of funds.

10. Per bank records, the $2,512,021.27 sent on December 27, 2022 was deposited into Wells Fargo account number 5233902369 held by Mr. Alan Yegian (Yegian) of South River, New Jersey.

COMPLAINT FOR FORFEITURE

11. Law enforcement interviewed Yegian, who admitted that he had opened this account under the direction of his putative romantic partner Ms. Olivia Grayson (Grayson), who Yegian said he had met on Silversingles.com in July 2022. Yegian stated that he believed Grayson was an antique art dealer from Minnesota working overseas in Portugal who needed Yegian to receive funds from her parent company and convert those funds into cryptocurrency. Records checks for Grayson's identity through multiple law enforcement databases were met with negative results.

12. According to an investigation conducted by the USSS, Yegian was the victim of a romance scam, in which the perpetrators lure people into what appears to be an emotional or romantic relationship to motivate those individuals to perform tasks at the behest of the perpetrators - such as transferring, and in some cases, laundering, money. Considering the context and circumstances of their interaction and the lack of legitimate identity records in any law enforcement databases, per law enforcement, Grayson was likely a fictitious identity. Statements made by Yegian, the methods used in the fraudulent activity, and financial records led law enforcement to identify Yegian as having been involved in a romance scam that utilized Yegian as a "money mule." A "money mule" is someone who transfers or moves illegally acquired money on behalf of someone else, often unknowingly.

13. Per Yegian's statement to the USSS, Grayson had requested Yegian provide a bank account that could receive funds. Yegian's current banks were not satisfactory to Grayson, so Grayson advised Yegian that he should open a Wells Fargo account. Per Wells Fargo bank records, on November 17, 2022 Yegian then opened an account at Wells Fargo with $1,000 of his own money with the sole purpose of receiving funds under the supervision and at the direction of Grayson.

**B. Other Victims – Miller, Fair, and McMahill – Also Deposited Money into Yegian's Wells Fargo Account**

14. On December 7, 2022, this Wells Fargo account opened by Yegian received wire transfers of $3,000 from Kari Miller and $7,000 from Heather Christine Fair. The next day, on December 8, 2022,

this Wells Fargo account received another $2,455 wire transfer from Heather Christine Fair. On January 3, 2023, the account received a $30,000 wire transfer from Linda J. McMahill. Per Yegian, Yegian did not know any of these individuals, but when asked, Grayson told Yegian that Miller, Fair, and McMahill were her friends, and that Grayson was aware of the transfers.

15. Per bank records, the funds from the December 2022 transfers were depleted by bank fees, a $9,510 withdrawal conducted by Yegian on December 8, 2022, and a $400 ATM withdrawal conducted by Yegian on December 22, 2022, both at the direction of Grayson. By December 27, 2022, when the Legacy Partners wire of $2,512,021.27 was received, the account held only $996.21, which – based on financial analysis utilizing the Lowest Intermediate Balance Rule[1] - would have been the remainder from the suspected fraud against Grayson's victims (Miller and Fair).

**C. At The Direction of Grayson, Yegian Depleted the Wells Fargo Account by Writing Checks to Four Different Financial Institutions**

16. Following receipt of the Legacy Partners wire transfer of $2,512,021.27 on December 27, 2022, Yegian followed directions from Grayson to write several checks from his Wells Fargo account drawing from these funds. Per Yegian's statements to the USSS, as well as bank records, of those checks, four were successfully posted (i.e. deposited) at other financial institutions between December 29, 2022 and January 3, 2023:

    a. Wells Fargo Check 1009 for $236,800.00 made out to Yegian himself was deposited by Yegian into his Raritan Bay Federal Credit Union account, number 14244.

    b. Wells Fargo Check 1002 for $466,900.00 made out to Yegian himself was deposited by Yegian into his Santander Bank account, number 9537854035.

---

[1] In the Lowest Intermediate Balance Rule, criminal proceeds are spent last, only after innocent proceeds are depleted.

COMPLAINT FOR FORFEITURE

    c. Wells Fargo Check 1007 for $168,780.00 made out to Mr. Allan Gallaway was deposited into US Bank account 157534641822.

    d. Wells Fargo Check 1006 for $438,980.00 made out to Oyster Spring Enterprise was deposited into Bank of America account 446052661721, held by Mr. Richard Bowermaster (Bowermaster).

17. Per a victim statement from Legacy Partners, and corroborated by bank records, on January 3, 2023 Catamount contacted the accounting department at Legacy Partners asking about the absence of their expected wire transfer payment. Legacy Partners then reviewed the wire transfer record and realized they were victims of fraud. Legacy Partners notified JP Morgan Chase ("Chase") of the fraudulent transfer, who then notified Wells Fargo as the receiving bank. Wells Fargo then notified the downstream recipients of these funds - Santander Bank, Raritan Bay Federal Credit Union, US Bank, and Bank of America - of the suspected fraud.

18. Wells Fargo was able to freeze $1,226,027.48 and successfully return that partial amount to Legacy Partners' Chase account on January 11, 2023 (labeling it in Wells Fargo's records as a "Wire Transfer Reversal").

19. The following table is based on records from Wells Fargo, and provides detailed information to show how the Wells Fargo account was funded with wire transfers from Kari Miller, Heather Christine Fair, Legacy DTC Owner LLC, and Linda J McMahill, and thereafter used to, *inter alia*, make debit card purchases by YEGIAN at Walgreens Pharmacy and CVS Pharmacy, and fund the above-described checks written by YEGIAN (with the Legacy Partners deposit and suspect withdrawals highlighted):

| Post Date | Amount | Statement Description | Balance | Notes |
|---|---|---|---|---|
| 11/17/2022 | $1,000.00 | Cash Deposit | $1,000.00 | |
| 11/29/2022 | -$48.79 | Check Order Fee | $951.21 | |
| 11/30/2022 | -$10.00 | FEE | $941.21 | |
| 11/30/2022 | $10.00 | FEE REVERSAL | $951.21 | |

COMPLAINT FOR FORFEITURE

| Date | Amount | Description | Balance | Note |
|---|---|---|---|---|
| 12/7/2022 | $3,000.00 | Wire Transfer From KARI MILLER | $3,951.21 | |
| 12/7/2022 | $7,000.00 | Wire Transfer From HEATHER CHRISTINE FAIR | $10,951.21 | |
| 12/7/2022 | -$15.00 | FEE | $10,936.21 | |
| 12/7/2022 | -$15.00 | FEE | $10,921.21 | |
| 12/8/2022 | $2,455.00 | Wire Transfer From HEATHER CHRISTINE FAIR | $13,376.21 | |
| 12/8/2022 | -$9,510.00 | WITHDRAWAL MADE IN A BRANCH/STORE | $3,866.21 | |
| 12/8/2022 | -$15.00 | FEE | $3,851.21 | |
| 12/9/2022 | -$2,455.00 | CASHED CHECK | $1,396.21 | |
| 12/22/2022 | -$400.00 | ATM WITHDRAWAL | $996.21 | |
| 12/27/2022 | $2,512,021.27 | Wire Transfer From LEGACY DTC OWNER LLC | $2,513,017.48 | Victim Transaction |
| 12/27/2022 | -$15.00 | FEE | $2,513,002.48 | |
| 12/29/2022 | -$466,900.00 | CHECK | $2,046,102.48 | Check 1002 to YEGIAN Santander Bank |
| 12/30/2022 | $10.00 | FEE REVERSAL | $2,046,112.48 | |
| 12/30/2022 | -$500.00 | Debit Card Purchase WALGREENS STORE | $2,045,612.48 | |
| 12/30/2022 | -$500.00 | Debit Card Purchase WALGREENS STORE | $2,045,112.48 | |
| 12/30/2022 | -$500.00 | Debit Card Purchase WALGREENS STORE | $2,044,612.48 | |
| 12/30/2022 | -$2,000.00 | Debit Card Purchase CVS Pharmacy | $2,042,612.48 | |
| 12/30/2022 | -$10.00 | FEE | $2,042,602.48 | |
| 12/30/2022 | -$236,800.00 | CHECK | $1,805,802.48 | Check 1009 to YEGIAN Raritan Bay FCU |
| 1/3/2023 | $30,000.00 | Wire Transfer From LINDA J MCMAHILL | $1,835,802.48 | |
| 1/3/2023 | -$2,000.00 | Debit Card Purchase CVS Pharmacy | $1,833,802.48 | |
| 1/3/2023 | -$438,980.00 | CHECK | $1,394,822.48 | Check 1006 to OYSTER SPRING ENTERPRISES BofA |
| 1/3/2023 | -$15.00 | FEE | $1,394,807.48 | |
| 1/3/2023 | -$168,780.00 | CHECK | $1,226,027.48 | Check 1007 to GALLAWAY US Bank |
| 1/10/2023 | -$1,226,027.48 | Wire Transfer Reversal | $0.00 | |

20. Notably, the deposits in the account totaled $2,555,476.27. Of this total, $43,455 was attributable to the $1,000 initial deposit from YEGIAN, and separate wire transfers from Kari Miller, Heather Christine Fair, Linda J. McMahill – or 1.73% of the total deposited into the account. The

COMPLAINT FOR FORFEITURE

remaining $2,512,021.27 came directly from the victim Legacy Partners, representing a vast majority of the deposited funds, or 98.27% of the total deposits in the account.

21. After being contacted, the various banks (Santander Bank, Raritan Bay Federal Credit Union, US Bank, and Bank of America) put a hold on the entire amounts deposited from the respective checks: Raritan Bay Federal Credit Union put a hold on $236,800 of victim funds, US Bank put a hold on $168,780 of victim funds, and Bank of America put a hold on $438,980 of victim funds.

22. Santander Bank held Check 1002 in the amount of $466,900.00 temporarily through the evening of January 5, 2023. However, Yegian was still able to wire $445,000.00 from his Santander Bank account into his Raritan Bay Federal Credit Union account on January 6, 2023. As a result of this transfer, Raritan Bay Federal Credit Union held a total of ***$681,800*** of victim funds in the account (the Defendant Property). Santander Bank put a hold on the partial amount remaining - $21,900 - from the deposit of their respective check funded by victim funds.

23. As noted above, the funds transferred to Santander Bank and Raritan Bay Federal Credit Union specifically, were funded by the Legacy Partners deposit, and $996.21, which – based on financial analysis utilizing the Lowest Intermediate Balance Rule[2] - would have been the remainder from the suspected fraud.

24. The following graph provides a visual representation of how the victim funds were transferred. Please note, the funds held by the financial institutions are noted on the graph as being "HELD":

---

[2] In the Lowest Intermediate Balance Rule, criminal proceeds are spent last, only after innocent proceeds are depleted.

COMPLAINT FOR FORFEITURE



*Figure 1.* Summary Flow-Chart of Transactions and Balances

**D. All of The Funds Transferred to These Other Entities, Including the Defendant Property, Were Criminal Proceeds and Therefore Seized by the U.S. Government**

25. Based on the investigation conducted by the USSS and the U.S. Attorney's Office for the Northern District of California, all of the funds that were deposited and transferred to Santander Bank, Raritan Bay Federal Credit Union, US Bank, and Bank of America were criminal proceeds from wire fraud, in violation of 18 U.S.C. § 1343.

26. Investigators at Bank of America advised the USSS on January 12, 2023 that the owner of the US Bank account – Allan Gallaway - had admitted to them that he was also involved in a romance scam. On or about February 2, 2023, Yegian was contacted by the owner of the Bank of America account – Richard Bowermaster - who described being in a similar situation to Yegian, with another female directing him to receive and transfer money.

27. On February 2, 2023, Yegian stated to the USSS that he did not know any of the sending parties that had transferred funds to his Wells Fargo account - namely Legacy Partners, Kari Miller, Heather Christine Fair, and Linda J. McMahill. When he did receive money in his account, Yegian

COMPLAINT FOR FORFEITURE

would contact Grayson to ask why he was receiving money from them.  In the case of Kari Miller, Heather Christine Fair, and Linda J. McMahill, Grayson told Yegian that they were friends of hers. Grayson also told Yegian that Legacy DTC Owner LLC was the parent company overseeing her activities related to the purchase and re-sale of antique art items and artifacts

28. On February 13, 2023 the USSS contacted two other parties - Linda McMahill and Kari Lynn Miller - who had wired money to Yegian's accounts - $30,000 and $3,000 respectively. Both remembered the deposits into Yegian's account, but did not know Yegian or Grayson. The USSS determined both were victims of fraudulent online schemes. McMahill stated that she believed that she needed to send money to the doctor of her now-deceased fiancé, both of whom she had met online, to obtain her fiancé's purported gold stash. As a result, McMahill had a $235,000 loss. Separately, Miller explained that she had lost approximately $80,000 in an online scheme where she had to pay money to receive assistance in processing an application for a purported government benefits program

29. In summary, the investigation revealed that an individual, or multiple individuals, utilizing the name Grayson did conspire to, and did obtain money via wire transfer, from the victims - Legacy Partners (Legacy DTC Owner LLC), Miller, Fair, and McMahill – through multiple schemes and utilizing fraudulent and false pretenses.

30. But for the lies told to Legacy Partners and Catamount, the $2,512,021.27 wire from Legacy Partners would never have been sent to Yegian's account. Further, but for the lies to Miller and McMahill, the USSS does not believe McMahill would have sent the wires to Yegian's account. Based on this information, USSS believes Fair is an additional victim of an individual, or multiple individuals, utilizing the name Grayson, in related fraudulent schemes.

31. Further, the actual receipt and deposit of the funds into Yegian's account were committed via wire transfer – and in the case of Legacy Partners, which was based in California, Yegian's account was out-of-state and located in New Jersey, necessitating the crossing of state borders.

COMPLAINT FOR FORFEITURE

32. Ultimately the purpose of Grayson's criminal scheme was to defraud the victims and obtain their money.

33. As a result, the USSS and the U.S. Attorney's Office for the Northern District of California obtained Seizure Warrants on February 14, 2023 for all of the criminal proceeds held by each of the four entities, sworn to by USSS Special Agent Justin Setty and signed by U.S. Magistrate Judge Laurel Beeler in the Northern District of California. These Seizure Warrants were then served on the financial institutions by the USSS.

34. Raritan Bay Federal Credit Union sent to the USSS a cashier's check in the amount of $681,800.00 written to the order of United States Secret Service on February 15, 2023, which was received by the USSS on March 1, 2023 and is now currently in United States Secret Service custody (the Defendant Property). This Complaint for Forfeiture seeks the forfeiture of these funds specifically.

35. As discussed above, Raritan Bay Federal Credit Union received a total of $681,800.00 through transfers conducted by Yegian on December 30, 2022 (from Wells Fargo) and January 6, 2023 (from Santander Bank). This occurred after Yegian received the $2,512,021.27 wire into his Wells Fargo account, which was sent due to fraud.

36. Based on the investigation by the USSS and the U.S. Attorney's Office for the Northern District of California, the $681,800.00 seized from Yegian's Raritan Bay Federal Credit Union account number 14244 (the Defendant Property) is attributable to proceeds of the wire fraud described in this affidavit and therefore should be forfeited to the U.S. government for proper disposition.

**VIOLATION**

The United States incorporates by reference the allegations in paragraphs one through **36** as though fully set forth.

Title 18, United States Code, Section 981(a)(1)(D) provides for civil and criminal forfeiture of any property, real or personal, which represents or is traceable to the gross receipts obtained, directly or indirectly, from a violation of Title 18, United States Code, Section 1343.

In light of the foregoing, and considering the totality of the circumstances, there is probable cause to believe that the entirety of the Defendant Property represents proceeds traceable to wire fraud in violation 18 U.S.C. § 1343. As such, the Defendant Property is forfeitable pursuant to 981(a)(1)(D).

WHEREFORE, plaintiff United States of America requests that due process issue to enforce the forfeiture of the Defendant Property; that notice be given to all interested parties to appear and show cause why forfeiture should not be decreed; that judgment of forfeiture be entered; that the Court enter judgment forfeiting the Defendant Property; and that the United States be awarded such other relief as may be proper and just.

DATED: 3/24/23

Respectfully submitted,
ISMAIL J. RAMSEY
United States Attorney

  /s/ Donovan McKendrick
DONOVAN MCKENDRICK
Special Assistant United States Attorney

DAVID COUNTRYMAN
Assistant United States Attorney

COMPLAINT FOR FORFEITURE

VERIFICATION

I, JUSTIN SETTY, state as follows:

1. I am a Special Agent with the U.S. Department of Homeland Security, United States Secret Service ("USSS"). I am a case agent assigned to this case. As such, I am familiar with the facts, and the investigation leading to the filing of this Complaint for Forfeiture.

2. I have read the Complaint and believe the allegations contained in it to be true.

*   *   *   *   *

I declare under penalty of perjury that the foregoing is true and correct. Executed this 24th day of March, 2023 in San Francisco, CA.

JUSTIN SETTY
Special Agent
United States Secret Service

COMPLAINT FOR FORFEITURE